# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Weaver Hauling and Excavating, LLC, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 266 C.D. 2015 |
| | : | Argued: December 10, 2015 |
| Department of Labor and Industry, | : | |
| Office of Unemployment | : | |
| Compensation Tax Services, | : | |
| Respondent | : | |

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
            HONORABLE MARY HANNAH LEAVITT, Judge[2]
            HONORABLE P. KEVIN BROBSON, Judge


OPINION BY JUDGE BROBSON     FILED: January 6, 2016


Petitioner Weaver Hauling and Excavating, LLC (Weaver or LLC), petitions for review of a final decision and order of the Department of Labor and Industry (Department), which denied Weaver's petition for reassessment of unemployment compensation tax assessed by the Department's Office of Unemployment Compensation Tax Services (Tax Services). We now affirm the Department's order.

## I.    BACKGROUND

Weaver is organized as a multi-member limited liability company (LLC). (Reproduced Record (R.R.) at 3a, 102a,165a-174a, 269a-283a.) Weaver's

---

[1] This case was assigned to the opinion writer before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

operating agreement provides that an individual may purchase a 2% interest in the LLC for $100.00. (*Id.* at 165a-174a, 269a-283a.) In the operating agreement, Elmer Weaver is designated as the managing member. (*Id.*) Members may not compete with the LLC without approval, and they "acknowledge[] that [they] shall be taxed as a self-employed person in accordance to the tax laws relating to the taxation of self-employed persons." (*Id.*)

On November 9, 2012, Tax Services filed a notice of assessment against Weaver for wages paid to members of the LLC from 2008 through 2012, based on Tax Services' determination that the members were employees of Weaver. (*Id.* at 2a.) The amount assessed totaled $35,256.03. On November 23, 2012, Weaver filed a petition for reassessment with the Department, arguing that Tax Services erroneously classified its members as employees rather than independent contractors. (*Id.* at 1a-4a.)

The Department conducted a hearing concerning the petition for reassessment on May 15, 2014. During the hearing, the Department admitted various documents that were reviewed by Tax Services during its audit of Weaver, including a list of partners, Weaver's operating agreements, copies of federal tax form 1065 (concerning the return of partnership income for the years 2008 through 2012), and copies of instructional pamphlets available on the Department's website. The Department presented the testimony of Michael Deihl, the unemployment compensation tax agent who conducted the audit of Weaver. Weaver presented the testimony of Elmer Weaver, the managing member of the LLC, Levon Weaver, a minority member of the LLC, and Galen Martin, Weaver's accountant.

2

By opinion and order dated February 15, 2015, the Department's Deputy Secretary for Administration issued a final decision of the Department, denying Weaver's petition for reassessment. In so doing, the Department made the following findings of fact:

1. [Weaver] operates as a general hauling and excavating, trucking business, doing excavating for residential and dirt work and dump truck work and aggregate hauling, with gravel as its primary product or service.

2. [Tax Services], specifically Michael Deihl, a UC Tax agent, conducted [a] UC audit of [Weaver] for the tax year 2010 and then expanded its audit to encompass the first quarter of 2008 through to the second quarter of 2012.

3. [Tax Services] presented the Pennsylvania Enterprise Registration Form PA-100 filed by [Weaver] in 2012, registering for Pennsylvania unemployment taxes for that year.

4. [Weaver] had previously filed a Form PA-100 in 2006.

5. *[Tax Services] records indicate that [Weaver] was issued a Subjectivity Notice on September 18, 2006, and that [Weaver] paid wages in some form between October 1, 2006, through March 31, 2007.*

6. The Subjectivity Notice advises employers of filing requirements and the penalties for not filing reports with the Department.

7. As part of [Tax Services'] audit, Karen Sensenig, from [Weaver]'s accountant's office, submitted a list of "partners", hereinafter referred to as "members", for the Year 2010 and copies of U.S. Return of Partnership Income Form 1065, along with Schedule K-1s [(K-1s)] for 2010.

8. *[Tax Services] received copies of various LLC Operating Agreements and Partnership Agreements from [Weaver], which indicate that various members paid $100.00 for a 2% interest in Weaver . . . .*

3

9. All members receive a weekly draw based on time worked and services performed, which was the guaranteed payments to the members.

10. [Weaver] prepared a spreadsheet of the guaranteed payments to members, for the pertinent years in question, to [Tax Services] as part of its audit.

*11. Based upon the information provided by . . . [Weaver], [Tax Services] concluded that [Weaver]'s members were employees, and that they received wages for services performed for unemployment tax purposes.*

12. Petitioner was originally a general partnership established in 1992, managed by Elmer Weaver, which then formed into a[n LLC] in 2005, however, was not incorporated.

13. [Weaver]'s LLC is governed by numerous operating agreements with the individual members for the applicable time period in question.

14. Elmer Weaver is managing member of . . . [Weaver], having paid a capital interest in the company of $4,500.

15. Most other members of the LLC received a 2% interest with a capital investment of $100.

*16. Elmer Weaver would have to agree to give someone more than a 2% interest.*

17. Elmer Weaver's interest in the LLC would increase or decrease, proportional [sic] to the number of members and their percent of interest in the LLC.

18. Elmer Weaver's interest in the LLC was approximately 83.833333% in 2008, 84% in 2009, 83.666667% in 2010, 82.833333% in 2011, and 80.333333% in 2012.

19. Members signed operating agreements with the LLC, which established their membership interest.

*20. [Weaver] has had employees, and a worker could decide not to be a member of the LLC and would instead be considered an employee.*

21. As a member of the LLC, the members agree to a non-compete clause.

22. As a member of the LLC, members agree that they shall be taxed as "self-employed" persons, and that the member is responsible to pay self-employment taxes.

23. Member[s] could elect to withdraw from the LLC, in writing, and would be paid out.

*24. [Weaver] has held money in escrow for at least two of its members for quarterly employment taxes so that those members could make payment.*

25. The members would meet occasionally to discuss business issues. Although there was no formal voting process, purported members had voting rights based on their proportional shares.

*26. When the members did not want to move in the same direction as Elmer Weaver, he would work out a solution. He would sometimes take the position of minority members with regards to how to handle a particular job, or with regard to the jobs [Weaver] may take.*

27. [Weaver] has had 10 to 12 members of the LLC per year, other than Elmer Weaver, for all years relevant to the audit.

*28. [Weaver] has allocated profits/income based on membership share, but has not had losses to allocate since inception.*

29. Galen Martin has been [Weaver]'s tax accountant for a number of years, and prepared [Weaver]'s tax returns in 2008 through 2012.

30. For all periods relevant, [Weaver] filed its federal taxes as a partnership, filing Tax Returns and U.S. Return of Partnership Income, Form 1065, including K-1s.

*31. Business profits distributed to the members for the years in question, minus guaranteed payments and expenses, were $37,515.04 in 2008, $6,227.44 in 2009, $10,886.39 in 2010, $11,528.57 in 2011, and [$]1,583.02 in 2012.*

32. The K-1s indicated that [Weaver]'s 2% members received an individual allocation of profits of $750.30 in 2008, $124.55 in 2009, $217.73 in 2010, $230.57 in 2011, and $31.66 in 2012.

5

*33.   Of the years covered by the audit, [Weaver] has the highest profit year in 2012, with $2,085,212.57 in gross receipts/sales and $1,519,210.94 in gross profits, but the 2% members received their lowest allocation of profits based on percentage share, $31.66.*

34.   Levon Weaver, son of Elmer Weaver, testified on behalf of [Weaver].

35.   Levon Weaver was a member with the LLC since 2005, but had also been a partner in the prior partnership.

36.   Levon Weaver provided a capital contribution of $100.00 for his 2% interest in the LLC.

37.   Levon Weaver recalled being in meetings with the other members discussing business related to the LLC.

*38.   The employees who elected not to become members of the LLC were welcome at the business meetings, but did not attend.*

39.   Levon Weaver had been in meetings where the minority members had swayed Elmer Weaver from a position in which the other members did not necessarily agree.

*40.   Levon Weaver's job involved office work, and he agreed that he knew upon entering into the operating agreement that he would be considered self-employed, although could not independently identify what an LLC was.*

(Department Op. at 2-7 (citations omitted) (footnotes omitted) (emphasis added).) Based upon those findings, the Department determined that Weaver did not satisfy its burden to prove that its members were independent contractors. As such, the Department concluded that the members were employees of Weaver, rather than independent contractors. Weaver petitioned this Court for review.

6

## II. ANALYSIS

On appeal to this Court,[3] Weaver argues that the twelve findings of fact italicized above are not supported by substantial evidence. It also argues that the Department erred in concluding that Weaver was not a *bona fide* partnership. Additionally, Weaver contends that the Department erred in concluding that Weaver's partners were employees under Section 4(*l*)(2) of the Unemployment Compensation Law (Law).[4] Next, Weaver argues that the Department's decision and order conflicts with the Limited Liability Company Law of 1994 (LLC Law).[5] It further argues that the Department's decision and order conflicts with the Department's position set forth on its website and in its published pamphlets. Last, Weaver argues that the assessment of unemployment compensation tax upon Weaver constitutes a violation of the Uniformity Clause of the Pennsylvania Constitution.

### A. Substantial Evidence

Weaver first argues that substantial evidence does not support findings of fact numbers 5, 8, 11, 16, 20, 24, 26, 28, 31, 33, 38, and 40. Substantial evidence is defined as "relevant evidence upon which a reasonable mind could base a conclusion." *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

[4] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 753(*l*)(2)(B).

[5] 15 Pa. C.S. §§ 8901-8998.

substantial evidence to support the Department's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Department's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the [Department] is not grounds for reversal if substantial evidence supports the [Department]'s findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

With respect to finding of fact number 5, Weaver contends that a Subjectivity Notice is automatically generated when an employer registers for unemployment compensation taxes, and, therefore, the finding is not supported by substantial evidence. Specifically, Weaver argues that the Subjectivity Notice "alone does not support [a finding that] a business had employees." (Weaver Br. at 12.) Weaver's argument, however, does not affect the validity of the finding—namely, that Weaver was issued a Subjectivity Notice. Evidence that the Subjectivity Notice was issued on September 18, 2006, is located in the record in a

8

Department document admitted as evidence during the hearing, (R.R. at 176a), and Mr. Deihl testified that the document was issued, (*id.* at 60a-61a). We, therefore, reject Weaver's argument that substantial evidence does not exist to support finding of fact number 5.

As to finding of fact number 8, in which the Department found that Weaver's operating and partnership agreements provided that members received a 2% share of the LLC in exchange for a $100.00 capital contribution, Weaver argues that the operating and partnership agreements indicate that partners contributed differing amounts of capital and received varying percentages of interest in return. Weaver contends that the varying capital contributions and percentages of interest are supported by the K-1s which were produced for the relevant tax years. Despite this contention, the Department based finding of fact number 8 solely on the operating and partnership agreements that Tax Services received. With the exception of the agreements pertaining to Elmer Weaver, all of the agreements contain the following language: "Allocation of any profit after . . . expenses shall be allocated to the MEMBER at 2.000% of the profit. Distribution of any loss shall be divided in the same method as profit allocation. The capital to be contributed by the MEMBER is $100.00." (R.R. at 165a-174a, 269a-283a.) This language supports the finding that the partnership and operating agreements indicate that members paid $100.00 for a 2% interest in Weaver. We, therefore, reject Weaver's argument that substantial evidence does not support finding of fact number 8.

Weaver also argues that substantial evidence does not support finding of fact number 11, in which the Department found that Tax Services based its conclusion that Weaver's members were employees who received wages on

9

documentation it received from Weaver. The basis of Weaver's argument is that Mr. Deihl's investigation and analysis were flawed. Weaver appears to take issue with Mr. Deihl's conclusion, rather than the Department's finding of fact. Despite Weaver's contentions, there is ample evidence of record to support the Department's finding. During the hearing before the Department, Mr. Deihl testified that Weaver provided him with a number of documents, including federal tax forms, operating and partnership agreements, a spreadsheet detailing payments made to Weaver's members, and partnership income returns. (R.R. at 55a-59a.) Mr. Deihl also explained how he came to the conclusion that Weaver was not a *bona fide* partnership:

> The information that I issued based upon my decision, reviewing the material, I mean, it -- it showed me that the individuals had limited amount of liability with the company. They contributed a very small amount of money to become a member of the partnership. I believe it was a nominal fee of a hundred dollars to gain the, quote, unquote, partnership or partnership status.
>
> [Elmer] Weaver, owning the majority of the company, had the ultimate say in how the business was [run], how the money was spent, could provide direction and control over the services performed, basically had the ultimate decision in how the business was [run].
>
> The partners, as I said, they had limited liability. I believe there was even a noncompete clause that they couldn't work for others. So, in my -- my decision was made this really wasn't a bona fide partnership.

(*Id.* at 65a-66a.) Because substantial evidence exists to support finding of fact number 11, we reject Weaver's argument.

Weaver next contends that finding of fact number 16, in which the Department found that Elmer Weaver would have to agree to give someone more than a 2% interest, is not supported by substantial evidence. Specifically, Weaver

10

argues that Elmer Weaver's testimony before the Department indicates that he did not necessarily have the final decision with respect to new members joining the LLC. We agree that Elmer Weaver explained that the other members could "bypass him" if a number of individuals wanted to purchase a 2% interest in Weaver. (R.R. at 98a.) If an individual wanted to purchase *more* than a 2% interest, however, Elmer Weaver would have to agree:

> Q. That would be subject to your agreement, wouldn't it? You'd have to agree to their -- to anyone being allowed more than 2 percent, wouldn't you?
>
> A. I would.

(*Id.* at 97a.) We, therefore, reject Weaver's argument that finding of fact number 16 is not supported by substantial evidence.

With respect to finding of fact number 20, in which the Department found that Weaver had employees and that individuals could choose to become either an employee or member of Weaver, Weaver argues that the finding is a misrepresentation of Elmer Weaver's testimony, because no member has ever chosen to become an employee instead of a member of the LLC. Again, Weaver's argument does not affect the validity of the finding. There is substantial evidence of record to support finding of fact number 20. During the hearing before the Department, Elmer Weaver testified that Weaver had employees:

> Q. Since inception of the LLC, have you had employees who worked for you who were not -- who did not execute a membership or an operating agreement?
>
> A. Yes.

(R.R. at 87a.) Elmer Weaver further explained that individuals could choose to become employees rather than members:

> Q. So, someone could decide not to be a member of the LLC; is that correct?

11

A. That's right.

Q. And if that were the case, they'd just be an employee.

A. They would have -- they would request that, yes.

(*Id.* at 90a.) Although Elmer Weaver testified that nobody had yet opted to become an employee rather than a member, this testimony does not affect the finding that Weaver had employees and that individuals could choose to become either an employee or a member. We, therefore, reject Weaver's argument that substantial evidence does not exist to support finding of fact number 20.

As to finding of fact number 24, Weaver contends that because Weaver is not paying its members' quarterly employment taxes, but, rather, holding money in escrow for its partners, this finding is a mischaracterization of Elmer Weaver's testimony. The Department, however, did not find that Weaver was paying quarterly employment taxes for its members. Finding of fact number 24 simply provides that Weaver held money in escrow for some of its members so that they would be able to pay taxes. This finding is supported by the record. During the hearing before the Department, Elmer Weaver testified:

> Q. Have you ever had an occasion where taxes have been withheld from a member of the LLC?
>
> A. Not the actual taxes. There's been some money that he asked to keep in a little escrow, because he said, If I have it, I spend it. So, that's what we did.
>
> Q. And what did you do with that money, then?
>
> A. At the time that he wanted to send it, we just send it in for him.
>
> Q. What do you mean by "send it in"?
>
> A. For the quarterly estimates.
>
> Q. So, he would pay his own quarterly taxes, you were just holding the money aside for him in escrow.
>
> A. That's correct.
>
> Q. And you did that for one employee?

12

> A. Yes. There was two actually, but -- there would have been two that did that. The one was just a short term. But, presently, there's one that we've been doing that.
>
> Q. But as soon as the quarterly taxes are due, you issue a reimbursement to them?
>
> A. Yes.

(R.R. at 91a.) Because finding of fact number 24 is supported by substantial evidence, we reject Weaver's argument.

Weaver also argues that finding of fact number 26 is not supported by substantial evidence, because the record indicates that partners worked together and made decisions as a group with respect to the operation of Weaver. Despite Weaver's contentions, there is ample evidence of record to support the Department's finding. During the hearing before the Department, Elmer Weaver testified:

> Q. Have you had occasions where the members of the LLC didn't necessarily want to move in the same direction as you as the managing member?
>
> A. Yes.
>
> Q. And did you just agree with them or disagree with them?
>
> A. We worked out a solution.
>
> Q. So, sometimes you take the position of the minority members?
>
> . . .
>
> A. I would -- I would say yes. There's been more than once.
>
> Q. Can you give us an example?
>
> A. Oh, how to go about on certain jobs, I -- my experience is sometimes not -- they have better understanding, and sometimes they do go on their own because I'm not on the job every day all the time.

(R.R. at 86a-87a.) This testimony constitutes substantial evidence for the finding that Elmer Weaver worked out a solution with members with whom he disagreed, and that he would occasionally take the position of minority members with respect to the manner in which a job was to be performed. We, therefore, reject Weaver's argument that finding of fact number 26 is not supported by substantial evidence.

Next, Weaver argues that finding of fact number 28, in which the Department found that Weaver allocates profits and losses by membership share and that Weaver has not yet had any losses to allocate, is not supported by substantial evidence, because Weaver "has maintained a profitable business and partners were allocated profits as reflected on the income tax returns and K-1s." (Weaver Br. at 16.) Finding of fact number 28 is fully supported by Elmer Weaver's testimony before the Department:

> Q. For purposes of members of the LLC, do you allocate profits as well as losses amongst the members?
>
> A. We have not had losses, but we would; that is the agreement, yes.
>
> Q. But you have allocated the profits?
>
> A. Yes. We have allocated profits every year.
>
> Q. Based on membership share.
>
> A. Yes.

(R.R. at 89a.) Because Elmer Weaver's testimony supports the finding, we reject Weaver's argument that finding of fact number 28 is not supported by substantial evidence.

As to finding of fact number 31, in which the Department lists the profits distributed to members from 2008 through 2012, Weaver contends that it is

14

not supported by substantial evidence, because the term "business profits" is not defined and the amounts listed in the finding reflect ordinary business income.[6] The figures listed in finding of fact number 31 coincide with line 22 of federal Form 1065, which identifies the figures as "ordinary business income." (R.R. at 151a, 181a, 199a, 216a, 234a, 249a.) The Department's use of the term "business profits" clearly refers to "ordinary business income." We, therefore, reject Weaver's argument that finding of fact number 31 is not supported by substantial evidence.

Weaver also argues that finding of fact number 33, in which the Department found that Weaver's most profitable year was 2012, is not supported by substantial evidence, because the figure listed in the finding, $1,519,210.94, reflects total income prior to deductions, rather than gross profits. There is substantial evidence of record, however, to support this finding. In reviewing the federal tax documents for 2012, it is apparent that the Department's use of the term "gross profits" is consistent with the use of that term on line 3 of federal Form 1065. Specifically, the form indicates that in 2012, Weaver had a gross profit of $1,519,210.94. (R.R. at 249a.) We, therefore, reject Weaver's argument that substantial evidence does not exist to support finding of fact number 33.

Weaver next contends that finding of fact number 38 is not supported by substantial evidence, because the finding is a mischaracterization of Elmer Weaver's testimony. Specifically, Weaver takes issue with the portion of the finding which indicates that some employees elected not to become members of

---

[6] In his brief, Weaver actually contends that the term "business packets" is not defined, but we believe that Weaver intended to refer to the term "business profits," which was used by the Department in finding of fact number 31.

15

the LLC. We agree that substantial evidence does not exist to support this finding. During the hearing before the Department, Levon Weaver testified that Weaver's employees were welcome to attend business meetings, but that they opted not to come. (R.R. at 128a.) Elmer Weaver, however, testified that nobody opted to become an employee rather than a member. (*Id.* at 97a.) At most, this testimony indicates that Weaver had employees that were not members, but not that individuals had, in the past, chosen to become employees instead of members. Finding of fact number 38, therefore, is not supported by substantial evidence.

Although a portion of finding of fact number 38 is not supported by substantial evidence, the Department's misstatement does not constitute reversible error. The Department's finding is not material to its conclusion that Weaver did not qualify for the exception to the assessment of unemployment compensation tax, set forth in Section 4(*l*)(2)(B) of the Law. *See Benson v. Workmen's Comp. Appeal Bd. (Haverford State Hosp.)*, 668 A.2d 244, 248-49 (Pa. Cmwlth. 1995). In explaining its conclusion that Weaver had not established that its members were not free from control or direction in the performance of their jobs, and, thus, could not be considered independent contractors, the Department noted, as one of several factors, that individuals could choose to become members or employees of Weaver, a fact which is listed in finding of fact number 20 and fully supported by the record. (Department Op. at 13.) Such a finding would suggest that, because individuals could perform the same type of work as employees or members, there was no real difference between the two categories of individuals. This factor was not critical to the Department's analysis, and its absence would not alter the legal conclusion. Our conclusion that finding of fact number 38 is not supported by substantial evidence, therefore, does not constitute reversible error.

16

Last, Weaver argues that finding of fact number 40, in which the Department found that Levon Weaver did office work for Weaver and was a member of the LLC, but that he could not explain what an LLC was, is not supported by substantial evidence, because the Department inappropriately relied upon Levon Weaver's inability to provide a definition for the term "LLC." Despite Weaver's contentions that the Department placed inappropriate weight on Levon Weaver's inability to define an LLC, finding of fact number 40 is supported by substantial evidence. During the hearing before the Department, Levon Weaver testified that he performed office work for Weaver. (R.R. at 127a.) When asked to explain what an LLC was, Levon Weaver replied that he would rely on his attorney or tax accountant for such an explanation. (*Id.* at 129a-130a.) We, therefore, reject Weaver's contention that finding of fact number 40 is not supported by substantial evidence.

## B. *Bona Fide* Partnership

Weaver next argues that the Department erred in concluding that Weaver was not a *bona fide* partnership. Specifically, Weaver contends that the Department erred in failing to analyze the instant matter pursuant to the Supreme Court of the United States' decision in *Commissioner of Internal Revenue v. Culbertson*, 337 U.S. 733 (1949), in which the Court provided a test for determining whether an organization constitutes a partnership. The Department, however, did not consider whether Weaver was a *bona fide* partnership, despite Tax Services' argument before the Department that Weaver did not constitute a *bona fide* partnership for federal tax purposes. Rather, the Department explained:

> Under a straightforward application of Section 8925(a) of the LLC Law, [15 Pa. C.S. § 8925(a),] members of an LLC are deemed to be shareholders for state tax purposes, regardless of how the LLC elects to be taxed

17

for federal purposes.  Since the two-percent members are treated as shareholders by virtue of the LLC Law, *it becomes unnecessary to take up [Tax Service]'s argument that those members do not qualify as partners under federal tax law.*  It simply becomes a matter of ascertaining whether [Weaver] has overcome the . . . Law's presumption of employment for individuals receiving remuneration for services.

(Department Op. at 11 (emphasis added).)  Because the Department made no conclusion as to whether Weaver was a *bona fide* partnership, we reject Weaver's argument that the Department erred in so concluding.

## C. Section 4(*l*)(2)(B) of the Law

Weaver next contends that the Department erred in analyzing the instant matter under Section 4(*l*)(2)(B) of the Law.  The crux of Weaver's argument appears to be that its members were self-employed partners and, therefore, could not be considered employees for purposes of unemployment compensation tax.[7]  Within this argument, Weaver also contends that the Department erred in concluding that the members of Weaver were employees rather than independent contractors.

Weaver bases its argument, in part, on the premise that its members are partners, and that partners are independent contractors.  Weaver, however, is organized as an LLC, not a partnership.[8]  (R.R. at 3a, 102a.)  Weaver is thus

---

[7]  Whether an individual is an employee or independent contractor under Section 4(*l*)(2)(B) of the Law is a question of law, subject to this Court's review.  *Applied Measurement Prof'ls Inc. v. Unemployment Comp. Bd. of Review*, 844 A.2d 632, 635 (Pa. Cmwlth. 2004).

[8] As noted below, *infra* Part II.F, the question of whether an employee is an independent contractor or employee is analyzed pursuant to Section 4(*l*)(2)(B) of the Law, regardless of **(Footnote continued on next page…)**

18

subject to the provisions of the LLC Law.  Section 8925(a) of the LLC Law, 15 Pa. C.S. § 8925(a), provides, in part:

> *For the purposes of the imposition by the Commonwealth of any tax* or license fee on or with respect to any income, property, privilege, transaction, subject or occupation, a domestic or foreign limited liability company that is not a domestic or qualified foreign restricted professional company shall be deemed to be a corporation organized and existing under Part II (relating to corporations), *and a member of such a company, as such, shall be deemed to be a shareholder of a corporation.*

(Emphasis added).  Members or managers of an LLC may also be employees of the organization.  Section 8946 of the LLC Law, 15 Pa. C.S. § 8946.  For purposes of unemployment compensation tax assessment, Section 4(*l*)(2)(B) of the Law "presumes that an individual is an employee."  *Beacon Flag Car Co., Inc. (Doris Weyant) v. Unemployment Comp. Bd. of Review*, 910 A.2d 103, 107 (Pa. Cmwlth. 2006).  Section 4(*l*)(2)(B) of the law provides:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that--(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

Wages are defined as "all remuneration . . . paid by an employer to an individual with respect to his employment."  Section 4(x) of the Law, 43 P.S. § 753(x).  If the

---

**(continued…)**

whether the entity in question is a partnership or an LLC.  *See Watson v. Unemployment Comp. Bd. of Review*, 491 A.2d 293, 295-96 (Pa. Cmwlth. 1985).

Department shows that an individual has performed services for wages, an employer may thus rebut the presumption of employment by demonstrating that the individual meets the criteria listed in Section 4(*l*)(2)(B) of the Law. *CE Credits Online v. Unemployment Comp. Bd. of Review*, 946 A.2d 1162, 1167 (Pa. Cmwlth.), *appeal denied*, 971 A.2d 493 (Pa. 2009). "Unless both of these showings are made, the presumption stands that one who performs services for wages is an employee." *Beacon Flag Car Co., Inc.*, 910 A.2d at 107.

We find no error in the Department's analysis of the instant matter under Section 4(*l*)(2)(B) of the Law. As noted above, Weaver is subject to the LLC Law, which provides that members of an LLC can be employees of the LLC. During the hearing before the Department, Mr. Deihl testified that he based his assessment, in part, on a spreadsheet listing the yearly and quarterly guaranteed payments made to Weaver's members. (R.R. at 57a-58a.) The guaranteed payments were based on the services the individuals provided to Weaver as members of the LLC. (*Id.* at 102a.) This testimony was sufficient to show that the LLC's members received wages and were thus subject to the presumption of employment found in Section 4(*l*)(2)(B) of the Law. In order to determine whether Weaver's members were employees or independent contractors for the purposes of the unemployment compensation tax, the Department properly analyzed the issue under Section 4(*l*)(2)(B) of the Law. We, therefore, reject Weaver's argument that the Department erred in analyzing the instant matter under Section 4(*l*)(2)(B) of the Law.

We also reject Weaver's argument that the Department erred in concluding that its members were employees rather than independent contractors. After the Department demonstrated that Weaver's members received wages, the

burden shifted to Weaver to show that "the [individual]'s services are performed free of the employer's control and the [individual]'s services are the type performed in an independent trade or business." *CE Credits Online*, 946 A.2d at 1167. As to the control prong of this test, this Court has explained:

> In analyzing the issue of control, courts consider factors such as: whether there was a fixed rate of remuneration; whether taxes were withheld from the [individual]'s pay; whether the employer supplied the tools necessary to carry out the services; whether the employer provided on-the-job training; whether the employer set the time and location for work; and, whether the employer had the right to monitor the [individual]'s work and review performance.

*Quality Care Options v. Unemployment Comp. Bd. of Review*, 57 A.3d 655, 660 (Pa. Cmwlth. 2012). "No single factor is controlling; therefore, the ultimate conclusion must be based on the totality of the circumstances." *Id.*

We agree with the Department that Weaver did not satisfy its burden to show that its members were free from its control and direction. The Department considered the testimony of Elmer and Levon Weaver, as well as that of Mr. Deihl. In so doing, it noted that although minority members of Weaver occasionally convinced Elmer Weaver to take a position which he had initially opposed, "there was insufficient evidence presented overall indicating that the members, and not the firm through Elmer Weaver, controlled the means and methods of how work was done." (Department Op. at 13.) Members received only a 2% interest in Weaver, and were prohibited from competing with Weaver without approval. (R.R. at 165a-174a, 269a-283a.) Payments made to the members of Weaver were largely based on services they performed for Weaver, rather than their 2% interest.

21

(*Id.* at 102a.)   There was no evidence presented relating to whether Weaver supplied the tools necessary for its members' work,[9] whether Weaver provided on-the-job training, whether Weaver set the time and location of work, or whether Weaver monitored its members' work.   Based on the totality of the circumstances, Weaver did not satisfy its burden.   We, therefore, reject Weaver's argument that the Department erred in concluding that the members of Weaver were employees rather than independent contractors.

## D. Limited Liability Company Law

Next, Weaver argues that the Department's opinion conflicts with the LLC Law.   Specifically, Weaver contends that LLC's are "generally treated as a form of partnership."   (Weaver Br. at 24.)   Weaver notes that individuals may receive an interest in an LLC "in exchange for cash, . . . services rendered or . . . a promissory note or other obligation . . . to perform services."   Section 8931(a) of the LLC Law, 15 Pa. C.S. § 8931(a).   Weaver argues that no language in the LLC Law precludes an LLC from being deemed a partnership due to the amount of capital contributed by members, nor does language exist to preclude members from being deemed partners if they do not share in the management of the LLC. Further, by identifying Elmer Weaver as the managing member of the LLC in the partnership and operating agreement, and by involving minority members in the operation of the LLC, Weaver contends that it "is operating in compliance with the partnership laws of this Commonwealth."   (Weaver Br. at 25.)

---

[9] The operating agreement provides that "[t]he managing member may require the MEMBER to provide certain tools, equipment, supplies or other expenses."   (R.R. at 165a-174a, 269a-283a.)   No testimony was presented, however, to explain whether the members actually had been required to contribute to the LLC in this manner.

Although Weaver correctly notes that the comments of Section 8925 of the LLC Law provide that an LLC is generally treated as a partnership, Weaver disregards the language of that section in favor of the language in the comments. As noted above, Section 8925(a) of the LLC Law provides that for purposes of taxation, LLCs are deemed to be corporations and LLC members are deemed to be shareholders of the corporation. The shareholders may also be employees. Weaver's compliance with partnership laws is immaterial in the instant matter. Although LLCs may be treated as partnerships in other matters, the LLC Law is clear that this general principle does not apply for purposes of taxation. The Department's distinction between taxation and the general principle that LLCs are treated as partnerships does not constitute a conflict with the LLC Law. We, therefore, reject Weaver's argument that the Department's opinion conflicts with the LLC Law.

### E. Department's Website

Weaver next contends that the Department's opinion conflicts with its position as provided on its website. Specifically, Weaver argues that there are two pamphlets on the Department's website that provide information contrary to the Department's opinion in the instant matter, because the pamphlets indicate that payments to Weaver's members are not subject to state unemployment compensation tax. The first pamphlet, entitled *Family Employment: Coverage and Exemption Under Pennsylvania Unemployment Compensation Law*, provides:

> Owners of an individual entity, also known as a sole proprietorship, and owners of a partnership are considered self-employed businesspersons. As such, remuneration paid to these owners is not considered "wages" and is not covered for [Pennsylvania unemployment compensation] tax purposes. The sole

23

owners and individual partners are the employer entities. Thus, the employer entity cannot be an "employee."

(R.R. at 285a, 288a.) The second pamphlet, entitled *Limited Liability Companies – UC Tax Liability*, provides: "Payments to members for services rendered to the entity are not subject to state [unemployment compensation] tax, unless the entity has elected to be treated as a corporation for federal tax purposes and to pay federal . . . [unemployment] tax on wages they pay to members." (*Id.* at 284a.)

As to the first pamphlet, we disagree that it provides support for Weaver's position and conflicts with that of the Department. This pamphlet provides information for individuals who own a partnership. Weaver is not a partnership, but a multi-member LLC. (*Id.* at 3a, 102a.) We, therefore, reject Weaver's argument as it relates to the first pamphlet.

As to the second pamphlet, which *does* apply to LLCs, Weaver notes that "the general public . . . have an expectation that the state government will provide correct information," but concedes that "one should not rely on information set forth on a website as the law." (Weaver Br. at 26.) As Weaver acknowledges, the information provided on the website is not a regulation or a statute. It is not, therefore, binding on the Department. *See Borough of Bedford v. Dep't of Envtl. Prot.*, 972 A.2d 53, 61-64 (Pa. Cmwlth. 2009) (explaining that regulations and statutes are binding on agency). The Department was not bound by the information provided in the pamphlet and was, therefore, entitled to take a position contrary to that which appears in the pamphlet. Thus, although the Department's opinion conflicts with the position set forth on its website, the

24

conflict does not constitute reversible error. We, therefore, reject Weaver's argument.[10]

## F. Uniformity Clause

Weaver next argues that its equal protection rights under the United States and Pennsylvania Constitutions were violated, because Weaver "is not being treated the same as other similarly-situated Pennsylvania taxpayers under the Uniformity Clause of the Pennsylvania Constitution[,]" PA. CONST. art. VIII, § 1.[11] (Weaver Br. at 27.) Specifically, Weaver argues that because members of LLCs

---

[10] The Department argues that it is not equitably estopped from taking a position contrary to that provided in the pamphlet. Specifically, it explains that "[t]here is nothing in the record to suggest that this page misrepresents a material fact, or that Weaver relied on it," and points to Weaver's acknowledgment that the information on the Department's website should not have been relied upon. (Department Br. at 22-23.) To the extent that Weaver's petition for review and brief raise the issue of equitable estoppel, we agree with the Department that Weaver failed to establish that the principle of equitable estoppel is applicable to this matter.

"Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect." *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503 (Pa. 1983). "[E]quitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity." *Id.* Weaver presented no evidence, nor does it allege in its petition for review or brief, that it justifiably relied upon the Department's pamphlet. We, therefore, agree with the Department that it was not equitably estopped from taking a position contrary to that provided in its pamphlet.

[11] Weaver also argues that its due process rights were similarly violated, and the Department counters that Weaver has waived the issue of due process, as Weaver, in its brief, has only developed the argument pertaining to equal protection and the Uniformity Clause. We agree. "Arguments not properly developed in a brief will be deemed waived." *In re: Condemnation of Land for S. E. Cent. Bus. Dist. Redevelopment Area #1: (405 Madison St., City of Chester)*, 946 A.2d 1154, 1156 (Pa. Cmwlth.), *appeal denied*, 968 A.2d 233 (Pa. 2008), *cert. denied*, 556 U.S. 1208 (2009). Although Weaver contends that its due process rights were violated, it presents no argument with respect to due process. Weaver's arguments pertaining to due process are, therefore, waived.

and partnerships are self-employed, the Department's conclusion that Weaver's members were employees violates the Uniformity Clause. In support of this argument, Weaver explains that the LLC Law and partnership laws do not "provide that a minority partner providing services to an entity is an employee based on his capital contribution, degree of management of the business, or the percentage of profits and losses received by the partner." (*Id.* at 28-29.) Weaver further contends that there is no mechanism by which it can be ascertained whether the Department is assessing unemployment compensation tax against all other LLCs and partnerships in a similar manner.

The Uniformity Clause of the Pennsylvania Constitution provides: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." The Equal Protection Clause of the United States Constitution provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Our Supreme Court has explained that "the analysis under the federal Equal Protection Clause and Pennsylvania's Uniformity Clause is largely coterminous." *Clifton v. Allegheny Cnty.*, 969 A.2d 1197, 1212 n.21 (Pa. 2009). "Under the equal protection clause, and under the Uniformity Clause, absolute equality and perfect uniformity in taxation are not required." *Leonard v. Thornburgh*, 489 A.2d 1349, 1352 (Pa. 1985). "The burden is upon the taxpayer to demonstrate that a classification, made for purposes of taxation, is unreasonable." *Id.* at 1351.

Weaver's first argument is based on a mischaracterization of the Department's conclusion. Weaver appears to assume that its employees were partners rather than employees, and that the Department's conclusion to the

26

contrary was based entirely on the members' capital contribution, share of the management of Weaver, and the allocation of profits. The Department, in analyzing the issue under Section 4(*l*)(2)(B) of the Law, made no conclusions as to the classification of Weaver's members as partners. Rather, the Department considered whether Weaver's members were independent contractors or employees for purposes of the assessment of unemployment compensation tax. The issue of self-employment for unemployment tax purposes, in both LLCs and partnerships, is analyzed pursuant to Section 4(*l*)(2)(B) of the Law. *See Watson v. Unemployment Comp. Bd. of Review*, 491 A.2d 293, 295-96 (Pa. Cmwlth. 1985). Weaver provides no authority for its assumption that partnerships and LLCs are treated differently for the purposes of determining whether an individual is an employee or an independent contractor. We, therefore, reject this argument.

We also reject Weaver's argument that there is no mechanism to ascertain whether other LLCs and partnerships are being treated similarly. This argument is speculative and assumes that similarly-situated individuals in an LLC or partnership will escape detection and, thus, escape taxation, creating a violation of the Uniformity and Equal Protection Clauses. Further, a mechanism for ascertaining whether such entities are properly classifying their employees, partners, or members already exists. The Department has the authority to select employers for audit to verify that the employers' records are accurate, as it did in the instant matter. Section 201 of the Law, *as amended*, 43 P.S. § 761. We, therefore, reject Weaver's argument that the Department's opinion violates the Uniformity and Equal Protection Clauses.

27

### III. CONCLUSION

Accordingly, we affirm the Department's order.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Weaver Hauling and Excavating, LLC, :
                        Petitioner   :
                                     :
            v.                       :   No. 266 C.D. 2015
                                     :
Department of Labor and Industry,    :
Office of Unemployment               :
Compensation Tax Services,           :
                        Respondent   :


# **O R D E R**


AND NOW, this 6th day of January, 2016, the order of the Department of Labor and Industry is hereby AFFIRMED.


_____
P. KEVIN BROBSON, Judge