IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Agnes and Steve Atuahene,         :
         Petitioners        :
                           :
        v.                  :
                           :
Pennsylvania Public         :
Utility Commission,         :  No. 1077 C.D. 2021
         Respondent       :  Submitted:  June 5, 2023

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: June 27, 2023

        Agnes and Steve Atuahene (Atuahenes), *pro se*, petition for review of a decision of the Pennsylvania Public Utility Commission (PUC).  The PUC rejected the Atuahenes' claims against PECO Energy Company (PECO),[1] in which the Atuahenes challenged a threatened termination of their electric service by disputing the correctness of PECO's electric meter readings and the legality of PECO's transfer of electric service account balances from several rental properties owned by the Atuahenes to the account at their current residential address.  The Atuahenes

---

[1] The Atuahenes resolved a related claim against their actual electric supplier, AEP Energy, Inc. (AEP).  Supplemental Reproduced Record (SRR) at 13b & 83b.

assert that PECO's actions violated their due process rights. Upon review, we affirm the PUC's decision.

## I. Background

In September 2019, in response to a threat of electric service termination for nonpayment, the Atuahenes filed a complaint with the PUC against PECO and AEP. They claimed they were overcharged for electricity at their residence because of a faulty meter, that PECO's transfer of balances from other accounts to the account at their residence violated their due process rights, that AEP obtained their service contract fraudulently, and that PECO and AEP thereby conspired to extort money from them. SRR at 3b-9b. As noted above, the Atuahenes resolved their claims against AEP. SRR at 13b. Thus, those claims are not at issue here.

In February 2020, an administrative law judge (ALJ) held a hearing on the Atuahenes' complaint. *See* SRR at 16b-189b. The Atuahenes appeared without counsel and testified but entered no exhibits.[2] PECO presented testimony from several witnesses and entered multiple exhibits without objection from the Atuahenes. *Id.* at 174b-77b & 191b-215b.

The hearing evidence established that the Atuahenes owned several rental properties. SRR at 62b-63b, 96b-97b & 105b-09b. The electric service account for each property had been in Agnes Atuahene's name during certain periods between 2014 and 2019. *Id.* at 104b-09b. The accounts had unpaid balances due

---

[2] The ALJ later reopened the record and offered Hearing Exhibit 1, which was accepted without objections from either side. The exhibit consisted merely of weather information regarding the "polar vortex" of 2014 and the "bomb cyclone" of 2017. SRR at 263b-64b.

from Agnes Atuahene for those periods. *Id.* at 122b-24b. Between 2015 and 2018, PECO transferred Agnes Atuahene's account balances from the rental properties to the account for the Atuahenes' residence, which account was also in Agnes Atuahene's name. *Id.* at 104b & 122b-24b. The unpaid balance at the time of the hearing totaled $2,076.04, which included $1,253.59 for the transferred accounts. *Id.* at 136b-39b.

In their testimony at the hearing, none of which was supported by any documentary evidence, the Atuahenes insisted that PECO improperly overcharged them due to a defective meter at their residence and never checked the meter or responded to Steve Atuahene's messages about it. SRR at 87b. They also speculated that the meters at the other account locations may have been likewise overcharging them. *See id.* at 180b (arguing that "PECO didn't establish or check the functionality of other meters").[3] They asserted that PECO violated their due process rights by transferring the other accounts to their residence account without advance notice. *Id.* at 180b-81b. Regarding AEP, they implied that PECO had somehow conspired with AEP to make AEP their electricity provider without their knowledge. *Id.* at 73b-75b. In addition, the Atuahenes maintained that after they filed their complaint, PECO further violated their due process rights by failing to serve them with its filings in the case. *Id.* at 27b.

---

[3] In their brief, the Atuahenes suggest that their complaint of overbilling based on a defective meter "appl[ied] to both the then current service address and the transferred accounts." Atuahenes' Br. at 15. Assuming, *arguendo*, that they are correct, the hearing evidence failed to establish that they ever challenged the accuracy of the meters for the transferred accounts by asking PECO to test those meters. Moreover, any overbilling by AEP was resolved by the Atuahenes' settlement with AEP. SRR at 13b & 83b.

The testimony of PECO's witnesses, its exhibits admitted without objection, and the ALJ's questioning of the Atuahenes presented a very different picture.

Regarding the meter at the Atuahenes' residence, PECO sent a letter explaining that it was prepared to check the electric meter and also offering to examine all the appliances inside the residence to calculate electricity usage. SRR at 200b. PECO later sent an email with a proposed testing date. *Id.* at 201b. Thereafter, PECO sent a technician to the Atuahenes' residence; no one answered the door, but PECO's technician nonetheless proceeded to check the meter, which was outside, and determined that it was working properly. *Id.* at 159b-60b. PECO offered evidence not only of the meter's accuracy, but also of the accuracy of the calibration device used to test the meter. *Id.* at 157b-64b.

As for the other account locations, the Atuahenes never offered any evidence that they asked PECO to check the meters at those locations. Although the Atuahenes claimed that PECO failed to notify them before transferring the other accounts to their residential account, they did not challenge PECO's legal right to transfer the accounts, nor did they point to any prejudice they suffered from the alleged lack of advance notice of the transfers.[4] *See* SRR at 180b-81b.

Similarly, regarding AEP, the Atuahenes did not point to any harm resulting from PECO's alleged conspiracy to make AEP their service provider. Further, they offered no evidence that PECO had any involvement in AEP's

---

[4] As for PECO's purported failure to serve the Atuahenes with litigation documents, the Atuahenes conceded, in response to questioning from the ALJ, that they had entered an incorrect address for service on their complaint and never notified PECO that the address was incorrect. SRR at 32b-43b.

selection as their electricity provider. They did not claim that AEP's rates were higher than PECO's or that AEP's service was in any way inferior to that of PECO.

After post-hearing arguments and briefing, the ALJ issued an Initial Decision denying the Atuahenes' complaint regarding both the transferred accounts and PECO's threatened termination. SRR at 276b-302b. The Atuahenes filed exceptions, "confining themselves to the issue of violation of their due process [rights] regarding the Transfer Account which was illegal [sic] transferred with [sic] notice of the billings and any required opportunity to challenge and/or interrogate the validity and authenticity of said billings." Atuahenes' Br. at 11. After considering the Atuahenes' exceptions to the Initial Decision and PECO's reply, the PUC issued an Opinion and Order denying the exceptions and adopting the Initial Decision. SRR at 305b-24b. The Atuahenes then sought review by this Court.

## II. Discussion

On review,[5] as in their exceptions, the Atuahenes raise a single issue challenging PECO's transfer of accounts from other properties to the account at their

_____

[5] This Court's scope and standard of review of the PUC's decision are as follows:

> On a petition to review a decision of [the] PUC, our standard of review is limited to determining whether substantial evidence supports the necessary findings of fact, whether [the] PUC erred as a matter of law, and whether constitutional rights were violated . . . . We defer to [the] PUC's interpretation of the Public Utility Code[, 66 Pa.C.S. §§ 101-3316,] and its own regulations unless [the] PUC's interpretations are clearly erroneous. . . . . We may not substitute our judgment for that of PUC when substantial evidence supports the PUC's decision on a matter within [its] expertise . . . . Judicial deference is even more necessary when the statutory scheme is technically complex . . . . On issues of law, our standard of review is *de novo* and our scope of review is plenary . . . .

5

residence without giving them notice of the transfer and an opportunity to challenge the correctness of the transferred balances and the associated meter readings. Atuahenes' Br. at 4. We agree with the PUC that this challenge lacks merit.

A utility's authority to transfer a customer's account is governed by Section 56.16 of the PUC's regulations, which provides, in full:

> § 56.16. Transfer of accounts.
>
> (a) A customer who is about to vacate premises supplied with public utility service or who wishes to have service discontinued shall give at least 7 days notice to the public utility and a noncustomer occupant, specifying the date on which it is desired that service be discontinued. In the absence of a notice, the customer shall be responsible for services rendered. After a reasonable attempt to obtain meter access, if the public utility is not able to access the meter for discontinuance, service shall be discontinued with an estimated meter reading upon which the final bill will be based. The resulting final bill is subject to adjustment once the public utility has obtained an actual meter reading.
>
> (b) In the event of discontinuance or termination of service at a residence or dwelling in accordance with this chapter, a public utility may transfer an unpaid balance to a new residential service account of the same customer.
>
> (c) If a termination notice has been issued in accordance with [Section] 56.91 (relating to general notice provisions and contents of termination notice) and subsequent to the mailing or delivery of that notice, the customer requests a transfer of service to a new location, the termination process in [Sections] 56.91-56.99 may continue at the new location.
>
> > (1) When notifications set forth under [Sections] 56.91 and [] 56.95 (relating to deferred termination

*Retail Energy Supply Ass'n v. Pa. Pub. Util. Comm'n*, 185 A.3d 1206, 1220 (Pa. Cmwlth. 2018) (*en banc*) (italics added; internal quotation marks, footnote, and citations omitted).

when no prior contact) have been rendered and service has not been terminated due to a denial of access to the premises, the public utility may deny service at a new location when a service transfer is requested.

(2) Nothing in this section shall be construed to limit the right of a customer to dispute a bill within the meaning of [Sections] 56.141-56.143 (relating to dispute procedures; time for filing an informal complaint; and effect of failure to timely file an informal complaint).

52 Pa. Code § 56.16. Thus, as set forth in Section 56.16(b), when a customer discontinues service pursuant to Section 56.16(a), the utility can simply transfer the relevant account to another existing account of the same customer. *See id.*, §56.16(a) & (b). Notably, Section 56.16(a) pertains to discontinuance at the customer's request. Accordingly, a customer requesting discontinuance is on notice through Section 56.16(b) that the balance of the discontinued account will be transferred to any of the customer's other existing accounts. There is no requirement in the regulation for the utility to provide separate notice before transferring the discontinued account balance to an existing account. *See id.*

Here, Agnes Atuahene specifically testified that she requested discontinuance of service for each of the transferred accounts once tenants had been found for the properties at issue and electric service had been placed in the tenants' names. SRR at 99b & 106b-10b. Therefore, she had constructive notice that PECO would transfer those discontinued accounts to her existing account at the Atuahenes' residence. *See Quigley v. Unemployment Comp. Bd. of Rev.*, 225 A.3d 914, 928 (Pa. Cmwlth. 2020) (citing *Cnty. of Lehigh v. Lerner*, 475 A.2d 1357, 1359 (Pa. Cmwlth. 1984) (stating the "ancient legal maxim" that everyone is presumed to know the law)); *Pana v. Pa. Bd. of Prob. & Parole*, 703 A.2d 737, 738 (Pa. Cmwlth. 1997)

7

(finding there was constructive notice of a provision set forth in a published regulation).

The Atuahenes cite *Vichosky v. Boucher*, 60 A.2d 381 (Pa. Super. 1948), for the proposition that a transfer of disputed account balances without notice is void *ab initio*. Atuahenes' Br. at 14. Contrary to the Atuahenes' assertion, *Vichosky* is inapplicable here. *Vichosky* related to an attempt to revive a judgment lien where the judgment had been entered prior to service of the complaint on the defendant. Thus, the facts and legal principles in *Vichosky* bear no relation to those in this case.

Even assuming, *arguendo*, that advance notice of the balance transfers was required here, the Atuahenes have failed to explain how the purported lack of such notice somehow deprived them of an opportunity to challenge the amounts of the transferred balances. Because they have failed to provide a developed argument sufficient to allow meaningful review on appeal, this argument is waived. *See Weaver Hauling & Excavating, LLC v. Dep't of Lab. & Indus.*, 132 A.3d 557, 576 n.11 (Pa. Cmwlth. 2016) (quoting *In re: Condemnation of Land for S. E. Cent. Bus. Dist. Redevelopment Area #1: (405 Madison St., City of Chester)*, 946 A.2d 1154, 1156 (Pa. Cmwlth. 2008) (stating that "[a]rguments not properly developed in a brief will be deemed waived")).

Moreover, even if it were not waived, the Atuahenes' argument lacks merit. As quoted above, Section 56.16(c)(2) expressly provides that "[n]othing in this [balance transfer regulation] shall be construed to limit the right of a customer to dispute a bill . . . ." 52 Pa. Code § 56.16(c)(2). Thus, PECO's mere transfer of the unpaid balances of Agnes Atuahene's other electric accounts to the account in her name at the Atuahenes' residence as authorized by PUC regulation did not, as a

8

matter of law, prevent them from asserting any challenge to the correctness of those balances.[6]

### III. Conclusion

Based on the foregoing discussion, the PUC's order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[6] The record contains no information indicating whether time limitations or other constraints may limit the Atuahenes' ability to challenge the billings from the other accounts. That issue is not before us.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Agnes and Steve Atuahene,      :
          Petitioners      :
                               :
          v.                :
                               :
Pennsylvania Public         :
Utility Commission,         :   No. 1077 C.D. 2021
          Respondent     :

## O R D E R

AND NOW, this 27th day of June, 2023, the order of the Pennsylvania Public Utility Commission entered on July 15, 2021 is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge